# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY BOUEY,<br><br>    Plaintiff,<br><br>  v.<br><br>THE REALREAL, INC., and<br>MICHAEL SOLLENBERGER,<br><br>    Defendants. | **Civil Action No.**<br>**2:26-cv-00394-BRM-JBC** |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

Jeffrey Bouey, Plaintiff *pro se*, respectfully submits this Opposition to Defendants' Motion to Compel Arbitration and Stay Case and Discovery (ECF No. 11).

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ......................................................... 1

LEGAL STANDARD ...................................................................... 2

ARGUMENT ................................................................................. 3

I. DEFENDANTS HAVE NOT ESTABLISHED A VALID
ARBITRATION AGREEMENT .......................................................... 3

    A.    The Agreement Lacks Required Waiver Language ................... 3

    B.    The Manner of Presentation Did Not Provide Reasonable
Notice ............................................................................ 4

    C.    Drafting Ambiguities Compound the Absence of Clarity .......... 6

II. THE EXECUTED AGREEMENT CONTRADICTS DEFENDANTS'
REPRESENTATIONS .................................................................... 7

III. THE CIRCUMSTANCES OF EXECUTION NEGATE KNOWING
ASSENT ..................................................................................... 8

IV. DEFENDANT SOLLENBERGER IS NOT A PARTY TO THE
AGREEMENT ............................................................................. 9

V. DEFENDANTS' ANTICIPATED ARGUMENTS DO NOT RESOLVE
THE FORMATION DISPUTE .......................................................... 10

    A.    Federal Policy Favoring Arbitration Does Not Override
Formation Requirements ................................................... 10

    B.    Atalese Does Not Require "Magic Words" ........................... 11

    C.    An Electronic Signature Does Not Establish Knowing
Assent ........................................................................... 11

    D.    The "Duty to Read" Doctrine Does Not Apply Here ............... 12

VI. THE COURT SHOULD PERMIT LIMITED DISCOVERY ON
CONTRACT FORMATION ............................................................. 13

CONCLUSION ............................................................................ 14

i

# TABLE OF AUTHORITIES

**Cases**

*Atalese v. U.S. Legal Servs. Grp., L.P.,*
219 N.J. 430 (2014), *cert. denied*, 576 U.S. 1040 (2015) .......... 3, 4, 5, 7, 14

*Cnty. of Passaic v. Horizon Healthcare Servs., Inc.,*
No. A-0952-21, 2023 WL 1807031 (N.J. Super. Ct. App. Div. Feb. 8,
2023) .......... 5

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.,*
716 F.3d 764 (3d Cir. 2013) .......... 2, 3, 16, 17

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark,*
581 U.S. 246 (2017) .......... 13

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.,*
636 F.2d 51 (3d Cir. 1980) .......... 16

**Statutes**

9 U.S.C. § 2 .......... 2, 13

28 U.S.C. § 1746 .......... *passim*

## PRELIMINARY STATEMENT

Plaintiff Jeffrey Bouey ("Plaintiff"), proceeding *pro se*, opposes Defendants' Motion to Compel Arbitration (ECF No. 11). Defendants seek to compel arbitration based on a "Business Protection and Arbitration Agreement" (the "Agreement") that was presented to Plaintiff as part of a bundled electronic onboarding package on the evening he accepted TRR's offer of employment.

The threshold question before this Court is whether a valid agreement to arbitrate was formed. Defendants bear the burden of establishing formation, and they have not carried it. The Agreement lacks the clear waiver language the New Jersey Supreme Court has held is necessary to bind a signatory to arbitration. It was presented in a manner that did not provide reasonable notice that the employee was relinquishing the right to a judicial forum. And it contains unfilled template fields—including blanks for the governing law, the arbitration location, and the arbitration panel—that contradict the representations in Defendants' own motion papers.

Further, Defendant Michael Sollenberger is not a signatory to the Agreement, and Defendants have not established any basis for non-signatory enforcement. For these reasons, the motion should be denied or, in the alternative, the Court should permit limited discovery on contract formation before ruling.

## LEGAL STANDARD

1

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." While federal law reflects a general policy favoring arbitration, that policy "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) (internal quotation marks omitted). The policy favoring arbitration does not apply until a court has determined that a valid agreement to arbitrate exists; it "does not require a court to compel arbitration in the absence of an agreement to do so." *Id.*

The party seeking to compel arbitration bears the burden of establishing that a valid agreement to arbitrate exists. Whether such an agreement was formed is determined under applicable state contract law. *Id.* at 771–72.

In *Guidotti*, the Third Circuit established a two-part framework. Where "the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint)," the motion to compel should be evaluated under a motion to dismiss standard. 716 F.3d at 776. However, where the complaint and incorporated documents "do not establish on their face that the parties agreed to arbitrate," the court applies a summary judgment standard—and the parties "should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the]

2

question." *Id*.

This case falls within *Guidotti*'s second category. The arbitration clause is not referenced in the Complaint, and the record raises genuine disputes about whether a valid agreement to arbitrate was formed. Accordingly, the summary judgment standard applies, and limited discovery is warranted.

## ARGUMENT

## I. DEFENDANTS HAVE NOT ESTABLISHED A VALID ARBITRATION AGREEMENT

A party moving to compel arbitration bears the burden of establishing a valid agreement to arbitrate under applicable state contract law. *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 442 (2014), *cert. denied*, 576 U.S. 1040 (2015). Defendants have not met this burden. The Agreement—a multi-purpose "Business Protection and Arbitration Agreement" filed as Exhibit 11-2—fails to satisfy New Jersey's requirements in three respects: (1) the Agreement lacks clear waiver language; (2) the manner of presentation did not provide reasonable notice of the arbitration obligation; and (3) drafting ambiguities in essential terms compound the absence of clarity.

### A. The Agreement Lacks Required Waiver Language

Under New Jersey law, an arbitration clause must clearly and unambiguously convey that the signatory is relinquishing the right to seek relief

3

in a judicial forum. *Atalese*, 219 N.J. at 444. The clause must "at least in some general and sufficiently broad way . . . explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." *Id*. at 447.

The Agreement does not satisfy this standard. Section 4(a) states that covered disputes "shall be submitted for final and binding arbitration" and that the arbitrator's decision "shall be final and binding." (Ex. 11-2 at 7–8.) But the Agreement does not clearly inform the employee that by agreeing to arbitration he is relinquishing the right to pursue covered claims in a judicial forum or to have a jury resolve the dispute. This is the deficiency *Atalese* identified as fatal: the clause "had none of the language our courts have found satisfactory—clear and unambiguous language that the plaintiff is waiving her right to sue or go to court to secure relief." 219 N.J. at 446.

As reflected in *County of Passaic v. Horizon Healthcare Services, Inc.*, No. A-0952-21, 2023 WL 1807031 (N.J. Super. Ct. App. Div. Feb. 8, 2023), this requirement applies with full force in the employment context, where unequal bargaining power demands heightened clarity. Plaintiff was a newly hired employee presented with an adhesion contract as a non-negotiable condition of employment, with a three-day deadline to accept.

## B. The Manner of Presentation Did Not Provide Reasonable Notice

The *Atalese* inquiry extends to whether the agreement, as presented, provided reasonable notice that the employee was entering into an arbitration agreement. 219 N.J. at 443–44. The circumstances here reinforced—rather than

cured—the textual deficiency.

The arbitration provision appears in Section 4 of a thirteen-page document dominated by confidentiality obligations, intellectual property assignments, non-competition covenants, and conflict-of-interest guidelines. An employee reviewing this document in the context of onboarding would reasonably understand it as a business protection agreement, not as a waiver of the right to pursue civil rights claims in a judicial forum.

The Offer Letter compounds this ambiguity. Page 2 references a "Business Protection and Arbitration Agreement" as an enclosure. Page 3 separately references an "At-Will Employment, Confidential Information, and Invention Assignment Agreement and the Mutual Arbitration Assignment." Page 4 lists yet another grouping: "Duplicate Original Letter; At-Will Employment, Confidential Information, and Invention Assignment Agreement; Mutual Arbitration Agreement." (Ex. 11-2 at 2–4.) These overlapping references to multiple documents with similar subject matter create material ambiguity about which agreement purportedly governs arbitration.

The audit trail on page 14 of Exhibit 11-2 confirms that the document package was accessed on a mobile device, viewed at 8:40 PM UTC, and signed at 8:42 PM UTC on a Friday evening. The signature on page 13 of the Agreement bears an identical timestamp to the Offer Letter signature on page 4: Friday, 24-Nov-2023 20:42:10. (Ex. 11-2 at 14.) These facts support the conclusion that Plaintiff understood himself to be accepting an offer of

5

employment as part of a single onboarding event—not separately and knowingly agreeing to arbitrate future civil rights claims.

## C. Drafting Ambiguities Compound the Absence of Clarity

The Agreement's lack of waiver language is compounded by drafting ambiguities in its essential provisions. As executed, the Agreement contains multiple unfilled template fields: the introductory paragraph provides no date and no employee name (Ex. 11-2 at 5); Section 4(a) directs arbitration to occur in a location left blank (Ex. 11-2 at 7); Section 4(b) provides that the arbitrator shall apply the law of a state left blank (Ex. 11-2 at 8); and Section 4(a) designates the arbitration panel as "a ___ arbitration panel" with no forum identified (Ex. 11-2 at 7).

These are not minor formatting oversights. They are essential terms that define the scope and operation of the arbitral obligation—the where, the when, the what law, and the who. An agreement that leaves each of these terms blank raises a threshold question: whether a finalized arbitration agreement was ever executed at all. An incomplete template that retains placeholder blanks for the most basic operative terms does not bear the hallmarks of a completed contract to which a party knowingly assented.

The presence of these unfilled fields is also relevant to the question of notice and assent. An agreement that retains blank placeholders for essential terms—including the employee's name, the date of execution, the arbitration location, and the governing law—bears the hallmarks of a standardized

6

onboarding template that was generated and transmitted without individualized review or explanation. The Agreement was bundled with the Offer Letter, delivered through a single electronic signing event, and signed on a mobile device in approximately two minutes. (Bouey Decl. ¶¶ 7–8, 13.) The unfilled fields corroborate that the arbitration provision was not separately presented or explained to Plaintiff as a standalone agreement to waive the right to pursue employment claims in court.

## II. THE EXECUTED AGREEMENT CONTRADICTS DEFENDANTS' REPRESENTATIONS

The significance of these unfilled terms is underscored by a discrepancy between the executed Agreement and the representations in Defendants' motion. Defendants' Memorandum of Law asserts that "the arbitrator shall apply the substantive internal law of the State of New Jersey" and that disputes will be resolved by "a single neutral member of JAMS." (Defs.' Mem. at 7–8.) However, the executed Agreement in Exhibit 11-2 actually states that the arbitrator shall apply "the substantive internal law of the State of ___" with the state left blank, and that disputes shall be resolved by "a single neutral member of a ___ arbitration panel" with the panel designation left blank. (Ex. 11-2 at 7–8.)

The terms that Defendants attribute to the Agreement do not appear in the executed document. Defendants are asking this Court to enforce an agreement on terms that the agreement itself does not contain. This discrepancy further demonstrates the ambiguity surrounding the arbitration provision and, at

7

minimum, supports Plaintiff's request for denial of the motion or a limited evidentiary hearing on contract formation.

### III. THE CIRCUMSTANCES OF EXECUTION NEGATE KNOWING ASSENT

The circumstances of execution further undermine any claim of knowing assent. Plaintiff declares under penalty of perjury that:

- At the time he applied his electronic signature, he understood that he was accepting TRR's offer of employment. He did not understand that he was agreeing to waive his right to bring employment disputes in court or his right to a jury trial. (Bouey Decl. ¶ 9.)

- At no point during the electronic signing process or the onboarding process did TRR separately inform him that he was agreeing to resolve employment discrimination or retaliation claims through arbitration rather than in court. (Bouey Decl. ¶ 10.)

- He did not receive any separate communication, written or oral, explaining that the documents he was signing included a waiver of his right to pursue civil rights claims in a judicial forum. (Bouey Decl. ¶ 11.)

- He first became aware that Defendants claimed an arbitration agreement existed when Defendants filed their Motion to Compel Arbitration on March 3, 2026. (Bouey Decl. ¶ 12.)

8

• The electronic signing system applied his signature to multiple pages of the document package, including both the Offer Letter (page 4) and the Business Protection and Arbitration Agreement (page 13). Both signatures bear the identical timestamp: Friday, 24-Nov-2023 20:42:10. He did not separately sign or acknowledge the arbitration provision. (Bouey Decl. ¶ 8.)

These facts demonstrate that Plaintiff did not knowingly and voluntarily assent to arbitrate his civil rights claims. The electronic onboarding process treated the arbitration agreement as an undifferentiated component of the employment offer, without any mechanism to ensure that the employee understood he was waiving his right to a judicial forum.

## IV. DEFENDANT SOLLENBERGER IS NOT A PARTY TO THE ARBITRATION AGREEMENT

Even if the Court were to find the Agreement enforceable as to TRR, Defendants have not established any basis for compelling arbitration of Plaintiff's claims against Defendant Michael Sollenberger. Sollenberger is not a signatory to the Agreement. The Agreement is styled as a contract between "The RealReal, Inc. (the 'Company')" and "the Employee," and was signed on behalf of TRR by Robert Burris, Senior Vice President, Talent. (Ex. 11-2 at 5, 13.) Sollenberger does not appear as a party anywhere in the executed document.

Defendants' motion does not address whether Sollenberger may enforce the arbitration clause as a non-signatory, nor does it invoke any recognized

9

theory of non-signatory enforcement—such as agency, estoppel, alter ego, or third-party beneficiary status—that might extend the Agreement's reach to an individual defendant. Where a movant has not carried its burden of establishing that a non-signatory has the right to compel arbitration, the motion must be denied as to that defendant. Accordingly, even assuming *arguendo* that the Agreement binds Plaintiff and TRR, Defendants have not demonstrated that Plaintiff's claims against Sollenberger are subject to arbitration.

## V. DEFENDANTS' ANTICIPATED ARGUMENTS DO NOT RESOLVE THE FORMATION DISPUTE

Plaintiff anticipates that Defendants will advance several arguments in reply. None cures the formation deficiencies identified above.

### A. Federal Policy Favoring Arbitration Does Not Override Formation Requirements

Defendants will likely invoke the strong federal policy favoring arbitration. But this policy "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate" and to place arbitration agreements "upon the same footing as other contracts." *Guidotti*, 716 F.3d at 771. It does not exempt arbitration agreements from ordinary state-law contract formation requirements. The FAA itself provides that arbitration agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court has confirmed, state-law contract defenses that

10

apply to "any contract" may be applied to invalidate arbitration agreements without running afoul of the FAA. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017). The *Atalese* clear-waiver requirement is precisely such a generally applicable contract-formation rule.

### B. *Atalese* Does Not Require "Magic Words"

Defendants may argue that *Atalese* does not require "magic words" and that any clear indication of arbitration suffices. This characterization misstates the holding. The New Jersey Supreme Court held that an arbitration clause must "at least in some general and sufficiently broad way" inform the signatory that he or she is waiving the right to bring claims in court or have a jury resolve the dispute. *Atalese*, 219 N.J. at 447. The issue is not whether the Agreement uses any particular form of words. The issue is whether the Agreement—in any words at all—informed Plaintiff that he was giving up his right to a judicial forum. It did not. Section 4(a) states that disputes shall be submitted to "final and binding arbitration" but nowhere states that the employee is thereby waiving the right to sue in court or have a jury trial. That is the deficiency *Atalese* identified as fatal, regardless of phrasing.

### C. An Electronic Signature Does Not Establish Knowing Assent

Defendants may argue that Plaintiff electronically signed the Agreement and is therefore bound by its terms. But the existence of an electronic signature does not resolve the question of whether the agreement, as presented, clearly

11

conveyed the nature and consequences of the arbitration obligation. The dispute here is not whether Plaintiff's signature appears on the document—it does. The dispute is whether the manner of presentation and the substance of the Agreement's terms were sufficient to produce knowing assent to arbitrate. The electronic signing system captured a single signature event at 20:42:10 UTC and applied it across a multi-document package that included both the Offer Letter and the Agreement. (Ex. 11-2 at 14.) The system did not require Plaintiff to separately acknowledge or affirmatively consent to the arbitration provision. The mere fact that a signature was electronically applied does not cure the formation deficiencies identified by *Atalese*.

**D. The "Duty to Read" Doctrine Does Not Apply Here**

Defendants may invoke the general principle that a party is bound by a contract he signs even if he does not read it. But that principle presupposes that the agreement, on its face, clearly conveyed the obligation at issue. The *Atalese* court expressly rejected the argument that the duty to read cures an arbitration clause that lacks clear waiver language. *See* 219 N.J. at 443 ("[A]n average member of the public may not know—without some explanatory comment—that arbitration is a substitute for the right to have one's claim adjudicated in a court of law.").

Moreover, the issue here is not that Plaintiff failed to read the Agreement. The issue is that the Agreement, even as written, does not clearly communicate that the signatory is waiving the right to a judicial forum—and that the manner of

presentation (a bundled thirteen-page onboarding document, signed on a mobile device in two minutes, with no separate disclosure of the arbitration provision) compounded the absence of clear notice. The duty to read does not supply the contractual clarity that *Atalese* requires the drafter to provide.

## VI. AT MINIMUM, THE COURT SHOULD PERMIT LIMITED DISCOVERY ON CONTRACT FORMATION

Even if the Court is not prepared to deny the motion on the present record, it should permit limited discovery on the formation and presentation of the alleged arbitration agreement before entering any order compelling arbitration.

As set forth in the Legal Standard above, *Guidotti* holds that where the complaint and incorporated documents "do not establish on their face that the parties agreed to arbitrate," the court should apply a summary judgment standard and afford the parties "discovery on the question of arbitrability before a court entertains further briefing on [the] question." 716 F.3d at 776; *see also id*. at 774; *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co*., 636 F.2d 51, 54–55 (3d Cir. 1980). Discovery is warranted on:

- The electronic onboarding process used by TRR, including how employment documents were assembled and transmitted to new hires;

- How the arbitration agreement was presented to Plaintiff, including whether it was presented as part of a single document envelope or as a separate agreement requiring independent acknowledgment;

13

- Whether the arbitration provision was separately disclosed or highlighted to Plaintiff at any point during the onboarding process;

- The configuration of the electronic signing platform that applied Plaintiff's signature across multiple documents within a single signing event; and

- The circumstances surrounding the unfilled template fields in the executed Agreement, including whether the blank fields reflect an incomplete or non-finalized document.

Accordingly, if the Court determines that the present record is insufficient to resolve the issue of contract formation, Plaintiff respectfully requests that the Court order limited discovery consistent with *Guidotti* before any order compelling arbitration is entered.

---

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Arbitration should be denied. The Agreement lacks the clear waiver language required by *Atalese*; was presented in a manner that did not provide reasonable notice of the arbitration obligation; contains drafting ambiguities—including unfilled essential terms—that raise threshold questions about whether a finalized agreement was ever executed; and contradicts Defendants' own representations as to its material

14

terms. Plaintiff declares under penalty of perjury that he did not knowingly assent to arbitrate his civil rights claims. And Defendant Sollenberger is not a signatory to the Agreement and has no established basis for compelling arbitration.

Alternatively, Plaintiff respectfully requests that the Court permit limited discovery and/or an evidentiary hearing concerning contract formation and assent, consistent with *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013).

Plaintiff respectfully requests such other relief as the Court deems just and proper.

Respectfully submitted,

Jeffrey Bouey, *Pro Se*
Plaintiff
122 Willow Street
Plymouth, PA 18651
jbouey2006@gmail.com

Dated: March 15, 2026

15