**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JEFFREY BOUEY,<br><br>Plaintiff,<br><br>v.<br><br>THE REALREAL INC., *a Delaware Corporation*; and MICHAEL SOLLENBERGER, *individually*,<br><br>Defendants. | Case No. 2:26-cv-00394 (BRM) (JBC)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendants The RealReal, Inc. ("TRR") and Michael Sollenberger's ("Sollenberger") (together, "Defendants") Motion to Stay and Compel Arbitration ("Motion"). (ECF No. 10.) *Pro se* Plaintiff Jeffrey Bouey ("Plaintiff") filed an Opposition. (ECF No 13.) Defendants replied. (ECF No. 14.) Having reviewed and considered the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion is **GRANTED**.

## I. BACKGROUND

### A. Factual Background

The Complaint does not reference the parties' agreement to arbitrate (*see* ECF No. 1), and therefore, for the purposes of this Motion, the Court relies on the Certification of Francis J. Giambalvo in Support of Defendants' Motion (ECF No. 11), which includes the agreement to

arbitrate. *See infra* Section III.A. (concluding the Court is required to consider the Motion under the Rule 56 standard of review).

TRR operates as "an online marketplace for authenticated luxury consignment." (ECF No. 1 ¶ 9.) On November 24, 2023, Plaintiff electronically signed an offer of employment ("Offer Letter") to join TRR as a Senior Systems Engineer. (Ex. B to Giambalvo Cert. (ECF No. 11-2) at 2–4.) In that role, Plaintiff was responsible for supporting TRR's IT infrastructure. (ECF No. 1 ¶ 11.) Sollenberger "is an individual who, at all relevant times, was employed by TRR as IT Manager and served as Plaintiff's direct supervisor from April 2024 until Plaintiff's termination." (*Id.* ¶ 10.)

The first page of the Offer Letter contained a section with a bolded heading stating, "**Business Protection and Arbitration Agreement**." (ECF No. 11-2 at 2.) Under that heading, the Offer Letter provided "[t]his offer and your employment are conditioned on your execution prior to the Start Date," which was anticipated to be December 11, 2023, "and your continued compliance with[] a Business Protection and Arbitration Agreement." (*Id.*) This section then noted a copy of the Business Protection and Arbitration Agreement is enclosed for Plaintiff to review and consider. (*Id.*) The section further clarified the Business Protection and Arbitration Agreement is "an integral part of this employment offer." (*Id.*) The title on the enclosed agreement, which stated "**BUSINESS PROTECTION AND ARBITRATION AGREEMENT**," was bold, underlined, and in all capital letters. (*Id.* at 5.)

This enclosed Business Protection and Arbitration Agreement included an arbitration clause, which is found on the third and fourth pages of the document under a bolded title stating

"**Arbitration**" (the "Arbitration Agreement"). (*Id.* at 7–8.) Subsection (a)[1] of the Arbitration Agreement provided:

> the Employee and the Company agree that, to the extent permitted by law, all claims or disputes arising out of or relating to this Agreement, the parties' employment relationship, or the termination of such relationship that may exist or arise between (i) the Employee and (ii) any of the Company, or any subsidiary, parent, other affiliate, other related entity, benefit plan, successor or permitted assign of the Company, or any owner, director, officer, member, employee, owner, shareholder, agent, or representative of any of them (in their respective capacities as such), shall be submitted for final and binding arbitration . . . . [C]laims subject to arbitration hereunder include without limitation claims by the Company relating to the Employee's employment and claims by the Employee for employment discrimination, harassment, retaliation, wrongful termination or defamation under any federal, state, or local law, regulation, ordinance, or executive order or under common law, and further include without limitation claims under any of the following statutes (as in effect or amended from time to time): Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans With Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act, and any applicable state, local or other laws and regulations.

(*Id.* at 7–8.) For those claims subject to arbitration, the arbitration must be conducted "in accordance with the JAMS Employment Arbitration Rules and Procedures." (*Id.* at 7.)

Subsection (b) described the limits of the arbitrator's powers. (*Id.* at 8.) For example, "[t]he arbitrator shall have no power to . . . make an award or impose a remedy that is not available to a court of general jurisdiction." (*Id.*) Moreover, subsection (b) provided "[t]he arbitrator's decision

---

[1] The parties refer to portions of the Business Protection and Arbitration Agreement by "paragraph" or "section" number. (*See, e.g.*, ECF No. 11-4 at 2; ECF No. 13 at 4.) However, the Business Protection and Arbitration Agreement contains bolded paragraph headings with lettered subsections. (*See* ECF No. 11-2.) For purposes of this Opinion, the Court will refer to "section" numbers as the bolded paragraph headings, and "subsections" as the lettered paragraphs under those headings. For example, the Arbitration Agreement, as defined in this Opinion, is Section 4 of the Business Protection and Arbitration Agreement and is found in the fourth paragraph with a bolded heading that states, "**Arbitration**." (*Id.* at 4.)

or award . . . shall be final and binding . . . and judgment thereupon may be entered in any court of competent jurisdiction." (*Id.*)

Subsection (c) of the Arbitration Agreement set forth certain exceptions to arbitration. (*See id.*) The following claims and disputes were excluded from mandatory arbitration: (1) "claims for which a binding arbitration agreement is invalid as a matter of federal law, and claims for workers' compensation and unemployment benefits," (2) "any and all claims arising under any provision of Section 2" of the Business Protection and Arbitration Agreement, which was entitled "Confidentiality, Intellectual Property and Restrictive Covenants," and (3) "[a]ny dispute arising out of or relating to the waiver of or prohibition on Class Claims." (*Id.*) Claims in this third exclusion category "shall be brought exclusively in and decided exclusively by a state or federal court . . . and shall not be brought in arbitration or decided by any arbitrator." (*Id.*)

Without mentioning the above Arbitration Agreement in the Complaint, Plaintiff brought this action asserting claims for race discrimination and retaliation. (*See* ECF No. 1.) Plaintiff, who is an African American, alleges Defendants discriminated against him on the basis of race by "[s]ubjecting him to stricter attendance requirements than similarly situated White employees," "[a]ssigning him a disproportionately heavy workload compared to White employees," "[c]riticizing his work while ignoring lesser work by White employees," "[i]ssuing a false [Performance Improvement Plan] based on fabricated performance deficiencies," and "[t]erminating his employment based on his race." (*Id.* ¶ 38.) Further, Plaintiff asserts he engaged in protective activity, particularly by submitting a written objection to the alleged discriminatory hybrid work policy, and Defendants terminated his employment less than twenty-four hours later. (*Id.* ¶ 45.)

### B. Procedural History

On January 12, 2026, Plaintiff filed the Complaint against TRR and Sollenberger, asserting claims for race discrimination and retaliation. (*See* ECF No. 1.) Defendants filed the Motion on March 3, 2026. (ECF No. 10; *see also* ECF No. 9 (granting Defendants' request for an extension of time to respond to the Complaint until March 3, 2026).) On March 16, 2026, Plaintiff filed an Opposition. (ECF No. 13.)[2] Defendants replied on March 30, 2026. (ECF No. 14.)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "establishes a policy in favor of arbitration that requires the liberal reading of arbitration agreements and the resolution of any doubts in favor of arbitration." *S. Broward Hosp. Dist. v. Medquist, Inc.*, 258 F. App'x 466, 467 (3d Cir. 2007) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, (1983)). The FAA provides a written provision "to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Decades ago, the Supreme Court discussed 9 U.S.C. § 2 as 'a congressional declaration of a liberal federal policy favoring arbitration agreements.'" *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338 (3d Cir. 2023) (quoting *Moses*, 460 U.S. at 24). More recently, though, the Supreme Court explained "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (quoting *Moses*, 460 U.S. at 24). Rather, this policy "is to make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

---

[2] Plaintiff filed an opposition (ECF No. 12) as well as a corrected opposition (ECF No. 13) on the same day. The Court refers to the corrected opposition in this Opinion.

"Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind." *Id.*

When addressing a motion to compel arbitration, a federal court is "limited to a 'narrow scope' of inquiry." *Gay v. CreditInform*, 511 F.3d 369, 386 (3d Cir. 2007) (quoting *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997)); *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 399 (3d Cir. 2020). The Court may consider only narrow "gateway matters" that touch on the question of arbitrability, such as whether an arbitration agreement applies to a particular controversy, or whether the parties are bound by the arbitration clause. *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 585 (3d Cir. 2007).

"[Q]uestions of arbitrability, including challenges to an arbitration agreement's validity, are presumed to be questions for judicial determination." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (quoting *Quilloin v. Tenent HealthSystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012)). "In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement." *Thomas v. Jenny Craig, Inc.*, Civ. A. No. 10-2287, 2010 WL 3076861, at * 3 (D.N.J. Aug. 4, 2010) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *Salvadori v. Option One Mortg. Corp.*, 420 F. Supp. 2d 349, 356 (D.N.J. 2006)). "State contract principles apply in ascertaining whether the parties to an action have agreed to arbitrate." *Sarbak v. Citigroup Glob. Mkts., Inc.*, 354 F. Supp. 2d 531, 537 (D.N.J. 2004) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)).

"Where arbitrability is apparent on the face of the complaint, a Rule 12(b)(6) standard of review should be applied to the motion to compel arbitration." *Sauberman v. Avis Rent a Car Sys., L.L.C.*, Civ. A. No. 17-756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (citing *Guidotti*, 716 F.3d at 774). However, the "Rule 12(b)(6) standard is inappropriate when either 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate" or when "the opposing party has come forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Guidotti*, 716 F.3d at 774. Rather, courts should use the Rule 56 summary judgment standard. *Id.* "Therefore, a court must first determine whether there is a genuine issue of material fact as to whether a valid arbitration agreement exists." *Jayasundera v. Macy's Logistics & Operations, Dep't of Hum. Res.*, Civ. A. No. 14-7455, 2015 WL 4623508, at *2 (D.N.J. Aug. 3, 2015). In making this determination, the party opposing arbitration receives "the benefit of all reasonable doubts and inferences that may arise." *Id.*

## III. DECISION

In reviewing a motion to compel arbitration, the court is required to make a threshold determination as to whether the motion should be considered without the opportunity for discovery under Rule 12(b)(6). *See Parkin v. Avis Rent A Car Sys. LLC*, 774 F. Supp. 3d 707, 711 (D.N.J. 2025). The Court first makes this determination before turning to the merits of the parties' arguments.

### A. Rule 56

The parties dispute which standard applies—Rule 12(b)(6) or Rule 56. The Third Circuit has articulated the Rule 12(b)(6) standard of review to be inappropriate only if "the complaint and

its supporting documents are unclear regarding the agreement to arbitrate" or "the plaintiff has responded . . . with additional facts sufficient to place the agreement to arbitrate in issue." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319 (3d Cir. 2024) (quoting *Guidotti*, 716 F.3d at 776). Under such circumstances, if the plaintiff demonstrates the existence of a factual dispute requiring limited discovery on the issue of arbitrability, then the court must deny the motion to provide the parties with the opportunity to conduct same, after which the defendant may file a renewed motion to compel arbitration under Rule 56. *See id.* at 319–20. If no such factual dispute exists, then the court may consider the motion under Rule 56. *See id.* A naked assertion—an assertion without the support of reliable evidence—is insufficient to demonstrate the existence of a factual dispute requiring the court to deny a motion to compel arbitration and to allow the parties the opportunity to conduct limited discovery on the issue. *Guidotti*, 716 F.3d at 774; *accord Young*, 119 F.4th at 319.

Here, Defendants argue the Court should "apply the motion to dismiss standard and compel arbitration without discovery." (ECF No. 14 at 13.) Plaintiff counters "the summary judgment standard applies, and limited discovery is warranted." (ECF No. 13 at 3.)

The existence of the Arbitration Agreement is not clear on the face of the Complaint. The Complaint neither references the Arbitration Agreement nor attaches the Arbitration Agreement's terms as an exhibit. (*See generally* ECF No. 1.) Furthermore, the Complaint does not base its causes of action on the existence of an arbitration agreement. (*See id.* ¶¶ 35–48.) Indeed, the Complaint asserts "Plaintiff did not sign any agreement to arbitrate employment disputes with TRR." (*Id.* ¶ 32.) Accordingly, the Court is required to consider the Motion under the Rule 56 standard of review. *See Young*, 119 F.4th at 319 (holding Rule 56 standard to be appropriate where the complaint made no reference to an agreement containing an arbitration clause, did not attach

such an agreement as an exhibit, and the claims were not based on the existence of such an agreement); *see also Guidotti*, 716 F.3d at 774.

However, Plaintiff has not raised a factual dispute requiring limited discovery on the arbitrability issue. Although Plaintiff raises several challenges to the Arbitration Agreement, those challenges are legal in nature, not factual. For example, Plaintiff does not contest he signed the Arbitration Agreement. Plaintiff instead argues the Arbitration Agreement does not contain sufficient waiver language, was not reasonably presented, and contains drafting ambiguities. (ECF No. 13 at 3–7, 10–11, 12 ("The dispute here is not whether Plaintiff's signature appears on the document—it does. The dispute is whether the manner of presentation and the substance of the [Arbitration] Agreement's terms were sufficient to produce knowing assent to arbitrate."), 13.) Because such arguments relate to the legal sufficiency of the Arbitration Agreement, and the material facts are not in dispute,[3] the Court can and will address such legal questions without discovery's delay. *See Young*, 119 F.4th at 320 ("[D]iscovery addressing a motion to compel arbitration is unnecessary when no factual dispute exists as to the existence or scope of the arbitration agreement.").

[3] Plaintiff asserts the circumstances surrounding his execution of the Arbitration Agreement show he did not knowingly and voluntarily assent to same because he did not understand he was waiving his right to bring employment claims in court, TRR did not separately inform him he was agreeing to arbitrate certain claims, he did not receive a "separate communication" explaining the documents he was signing contained a waiver of the right to pursue certain claims in court, and he did not "separately sign or acknowledge" the Arbitration Agreement. (ECF No. 13 at 8–9.) However, the Court does not find such facts to be material here. Plaintiff signed the Arbitration Agreement, and he does not argue his signature was a result of fraud. (ECF No. 11-2 at 13; ECF No. 13.) Any question as to whether Plaintiff understood what he was agreeing to is therefore legal in nature. *See infra* Section III.B.

**B. Validity**

Defendants argue the Arbitration Agreement must be enforced because it is valid and covers the claims at issue. (ECF No. 11-4 at 5–13.) Plaintiff does not dispute that the scope of the Arbitration Agreement covers his claims. (*See* ECF No. 13.) Instead, Plaintiff contends the Arbitration Agreement is not valid and enforceable for three main reasons: (1) it lacks sufficient waiver language and was not reasonably presented (*id.* at 3–6, 10–13), (2) it contains drafting ambiguities (*id.* at 6–7), and (3) the circumstances surrounding execution demonstrate Plaintiff did not knowingly assent to arbitrate (*id.* at 8–9).

In reviewing the validity of the Arbitration Clause, the Court places the proposed provision "upon the same footing as other contracts" and "may not [invoke] novel rules to favor arbitration over litigation." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022); *accord Berkelhammer v. ADP TotalSource Grp., Inc.*, 74 F.4th 115, 118 (3d Cir. 2023); *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339 (3d Cir. 2023). Under New Jersey law,[4] "[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law." *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017) (quoting *Atalese v. U.S. Legal Services Group, L.P.*, 99 A.3d 306, 313 (N.J. 2014)). "[I]f [the] parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Crawford v. Compass Grp. USA*, Civ. A. No. 14-2545, 2015 WL 1006389, at *3 (D.N.J. Mar. 6, 2015) (quoting *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992); *accord Levy v. AT&T Servs., Inc.*, Civ. A. No. 21-11758, 2022 WL 844440, at *3 (D.N.J. Mar. 22, 2022). "To manifest assent, 'an offeree must provide "unqualified acceptance," which can be express or

---

[4] Both Plaintiff and TRR agree New Jersey law applies here. (*See* ECF Nos. 11-4 (applying New Jersey law), 13 (same), 14 (same).)

implied by conduct.'" *James*, 852 F.3d at 265–66 (quoting *Weichert Co. Realtors*, 608 A.3d at 284).

"[T]o be enforceable, the terms of an arbitration agreement must be clear, and any legal rights being waived must be identified." *Lahoud v. Anthony & Sylvan Corp.*, 330 A.3d 803, 810 (N.J. Super. Ct. App. Div. 2025) (citing *Atalese*, 99 A.3d at 312–13); *see also Kernahan v. Home Warranty Administrator of Fl., Inc.*, 199 A.3d 766, 778 (N.J. 2019) ("[C]ontract terms should be given their plain and ordinary meaning."). "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." *Atalese*, 99 A.3d at 314; *see also Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016) ("No magical language is required to accomplish a waiver of rights in an arbitration agreement."). Rather, if the language of the clause in "some general and sufficiently broad way" adequately "conveys arbitration is a waiver of the right to bring suit in a judicial forum, the clause will be enforced." *Cintron v. Brink's Inc.*, Dkt. No. A-1981-24, 2026 WL 191316, at *3 (N.J. Super. Ct. App. Div. Jan. 26, 2026) (quoting *Atalese*, 99 A.3d at 315); *see also Atalese*, 99 A.3d at 314 ("Arbitration clauses—and other contractual clauses—will pass muster when phrased in plain language that is understandable to the reasonable consumer.").

Here, the Court finds the Arbitration Agreement contains sufficient waiver language. Subsection (a) of the Arbitration Agreement provided:

> the Employee and the Company agree that, to the extent permitted by law, all claims or disputes arising out of or relating to this Agreement, the parties' employment relationship, or the termination of such relationship that may exist or arise between (i) the Employee and (ii) any of the Company, or any subsidiary, parent, other affiliate, other related entity, benefit plan, successor or permitted assign of the Company, or any owner, director, officer, member, employee, owner, shareholder, agent, or representative of any of them (in their respective capacities as such), shall be submitted for final and binding arbitration . . . .

(ECF No. 11-2 at 7.) Subsection (a) further stated:

> claims subject to arbitration hereunder include without limitation claims by the Company relating to the Employee's employment and claims by the Employee for employment discrimination, harassment, retaliation, wrongful termination or defamation under any federal, state, or local law, regulation, ordinance, or executive order or under common law, and further include without limitation claims under any of the following statutes (as in effect or amended from time to time): Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans With Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act, and any applicable state, local or other laws and regulations.

(*Id.* at 7–8.) For those claims subject to arbitration, the arbitration must be conducted "in accordance with the JAMS Employment Arbitration Rules and Procedures." (*Id.* at 7.) Subsection (b) then described the limits of the arbitrator's powers, particularly by comparing the arbitrator's powers to those of a court. (*See id.* at 8 ("The arbitrator shall have no power to . . . make an award or impose a remedy that is not available to a court of general jurisdiction.").) Moreover, subsection (b) clarified those claims must be sent to arbitration, and only *after* an arbitrator renders a decision or award may judgment then be entered in a court. (*See id.* at 7–8 ("The arbitrator's decision or award . . . shall be final and binding . . . and judgment thereupon may be entered in any court of competent jurisdiction.").)

By contrast, subsection (c) of the Arbitration Agreement set forth certain exceptions to arbitration. (*See id.* at 8.) For instance, excluded from mandatory arbitration were: (1) "claims for which a binding arbitration agreement is invalid as a matter of federal law, and claims for workers' compensation and unemployment benefits," (2) "any and all claims arising under any provision of Section 2" of the Arbitration Agreement, which was entitled "Confidentiality, Intellectual Property and Restrictive Covenants," and (3) "[a]ny dispute arising out of or relating to the waiver of or

prohibition on Class Claims." (*Id.*) Notably, as to this third category of excluded claims, the Arbitration Agreement provided such claims "shall be brought exclusively in and decided exclusively by a state or federal court . . . and shall not be brought in arbitration or decided by any arbitrator." (*Id.*)

The Arbitration Agreement therefore plainly distinguishes between claims that must be brought in arbitration and claims that may or must be brought in court, explicitly identifies the rules by which the arbitration shall be governed and the limits by which the arbitrator is constrained, and differentiates between the process of arbitration as opposed to litigation in court. Under these facts, the Court is satisfied the language of the Arbitration Agreement in "some general and sufficiently broad way" indicates Plaintiff agreed to arbitrate certain claims and waived the right to bring such claims in a judicial forum. *Cintron*, 2026 WL 191316, at *3 (quoting *Atalese*, 99 A.3d at 315). Therefore, the Court finds the Arbitration Agreement contains an adequate waiver of the right to bring the claims outlined in subsection (a) in court. *See JPMorgan Chase & Co. v. Custer*, Civ. A. No. 15-6288, 2016 WL 927339, at *5 (D.N.J. Mar. 10, 2016) (concluding, under *Atalese*, the parties clearly and unambiguously agreed to arbitrate "nearly all employment-related disputes" when the arbitration agreement "as a whole" clarified the parties agreed to forfeit their right to litigate in court, the agreement "delineate[d] between how parties would seek immediate relief (in court) versus how parties would seek relief on all other claims (in arbitration)," and the agreement "show[ed] the distinctions between arbitration and a judicial forum"); *see also Chapman v. Salesforce, Inc.*, 817 F. Supp. 3d 226, 234 (D.N.J. 2026) ("Mutual assent is not undermined by an agreement that certain claims (like discrimination claims) must be treated in one way (arbitrated), while other claims (IP claims) are to be treated in another way (not arbitrated).").

The Court further finds the Arbitration Agreement was reasonably presented to Plaintiff. The first page of the Offer Letter contained a section with a bolded heading stating, "**Business Protection and Arbitration Agreement**." (ECF No. 11-2 at 2.) That section provided "[t]his offer and your employment are conditioned on your execution prior to the Start Date of, and your continued compliance with, a Business Protection and Arbitration Agreement." (*Id.*) It then pointed out a copy of same is enclosed for Plaintiff to review and consider. (*Id.*) Notably, the section also clarified the Business Protection and Arbitration Agreement is "an integral part of this employment offer." (*Id.*) The Business Protection and Arbitration Agreement contained a bolded and underlined title in all capital letters stating, "**BUSINESS PROTECTION AND ARBITRATION AGREEMENT**," and the arbitration clause itself, which is found on the third and fourth pages of the document, included a bolded title stating, "**Arbitration.**" (*Id.* at 5, 7–8.) This manner of presentation is sufficient. *See Montgomery v. Bristol-Myers Squibb. Co.*, Civ. A. No. 19-19948, 2020 WL 3169373, at *5 (D.N.J. June 15, 2020) (finding an offer letter "sufficiently placed [p]laintiff on notice that accepting a separate [a]rbitration [a]greement was a specific requirement of her employment: 'as a condition of employment, you will be required to electronically execute two [a]greements, the [e]mployee confidential information and noncompetition agreement, and mutual arbitration agreement located on the Onboarding Portal'"); *Chapman*, 817 F. Supp. 3d at 232 (rejecting argument mutual assent was lacking when arbitration clause was the "nineteenth paragraph of an eight-page document" because "courts applying New Jersey law routinely uphold arbitration agreements that are part of similarly long (or longer) contracts").[5]

[5] Plaintiff argues the Offer Letter is ambiguous because it included three distinct names for the enclosed Arbitration Agreement. (ECF No. 13 at 5.) Specifically, Plaintiff notes the Offer Letter referred to (1) a "Business Protection and Arbitration Agreement," (2) an "At-Will Employment, Confidential Information, and Invention Assignment Agreement and the Mutual Arbitration Assignment," and (3) a grouping stating "Duplicate Original Letter; At-Will Employment,

As for Plaintiff's argument regarding drafting ambiguities, the Court is unpersuaded. Plaintiff contends the Arbitration Agreement "contains multiple unfilled template fields," largely related to certain details of the arbitration process.[6] (ECF No. 13 at 6–7.) Plaintiff posits, without citing any authority, such gaps of essential terms indicate a contract was never completed or knowingly assented to. (*Id.*) The Court disagrees. The Arbitration Agreement provided the arbitration must be conducted "in accordance with the JAMS Employment Arbitration Rules and Procedures (as in effect or amended from time to time)." (ECF No. 11-2 at 7.) "JAMS is a highly-regarded national arbitration association skilled in dispute resolution, and employment disputes in particular." *McMasters v. Restaurant Brands Int'l, Inc.*, Civ. A. No. 20-791, 2021 WL 11728156, at *8 (W.D. Pa. Aug. 25, 2021). Any details of the arbitration process left out of the Arbitration Agreement will be addressed by the JAMS rules. Therefore, "the Arbitration Agreement cannot be found to lack an essential term simply because it leaves open procedural details of the arbitration

---

Confidential Information, and Invention Assignment Agreement; Mutual Arbitration Agreement." (*Id.* (quoting ECF No. 11-2 at 2–4).) However, even if the Offer Letter could have been clearer by using only one name for the Arbitration Agreement, the various references to an agreement regarding "Arbitration" could be read as providing numerous warnings to Plaintiff that an agreement to arbitrate was attached to the Offer Letter. Because the FAA "requires the liberal reading of arbitration agreements and the resolution of any doubts in favor of arbitration," *S. Broward Hosp. Dist. v. Medquist, Inc.*, 258 F. App'x 466, 467 (3d Cir. 2007) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)), the Court takes the latter view and finds the multiple references to arbitration, combined with the attached Arbitration Agreement itself, constitute reasonable notice to Plaintiff.

[6] Plaintiff also notes the "introductory paragraph [of the Arbitration Agreement] provides no date and no employee name." (ECF No. 13 at 6.) The first sentence of the Arbitration Agreement states, "[t]his Business Protection and Arbitration Agreement ("Agreement") dated as of is made by and between The RealReal, Inc. (the 'Company'), and (the 'Employee') as a condition of the Employee's employment and for other good, valuable and received consideration." (ECF No. 11-2 at 5.) The Court does not find the blanks in this first sentence make the agreement so incomplete as to render it unenforceable. Indeed, as even Plaintiff acknowledges, the Arbitration Agreement "was bundled with the Offer Letter"—which is dated November 24, 2023 and addressed directly to Plaintiff—and "delivered through a single electronic signing event." (ECF No. 13 at 7; *see also* ECF No. 11-2 at 2 (stating the Arbitration Agreement is an "integral part" of the Offer Letter).)

process." *Agnes v. Banfield Pet Hosp.*, Civ. A. No. 25-6361, 2026 WL 1244667, at *4 (E.D. Pa. May 6, 2026). Accordingly, the Court concludes the unfilled terms to which Plaintiff points do not render the Arbitration Agreement unenforceable. *See id.* at *6 (finding terms of arbitration agreement to be sufficiently definite when agreement "specifically enumerate[d] the types of claims that must be submitted to arbitration" and "provide[d] that the arbitration will be conducted by JAMS, a national arbitration association, under the current JAMS rules on employment arbitration"); *see also Flanzman v. Jenny Craig, Inc.*, 236 A.3d 990, 1003 (N.J. 2020) ("We do not . . . view the parties' omission of a designated arbitral institution or general process for selecting an arbitration mechanism or setting to warrant the invalidation of an arbitration agreement.").

Plaintiff further argues knowing assent is undermined by the circumstances of execution. (ECF No. 13 at 8–9.) Specifically, Plaintiff contends he did not understand he was waiving his right to bring employment claims in court, TRR did not separately inform him he was agreeing to arbitrate certain claims, he did not receive a "separate communication" explaining the documents he was signing contained a waiver of the right to pursue certain claims in court, and he did not "separately sign or acknowledge" the Arbitration Agreement. (ECF No. 13 at 8–9.) The Court rejects this argument for a simple reason: Plaintiff signed the Arbitration Agreement. (ECF No. 11-2 at 13; *see also* ECF No. 13 at 12 (acknowledging Plaintiff's signature "does" appear on the Arbitration Agreement).)

"It will not do for a [person] to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained." *Thomas v. Jenny Craig, Inc.*, Civ. A. No. 10–2287, 2010 WL 3076861, at *5 (D.N.J. Aug. 4, 2010) (quoting *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875)). "[C]ourts excuse a party's failure to comprehend a contract's terms only in rare cases." *Id.* Plaintiff is not claiming he signed the

Arbitration Agreement due to fraud. Nor is he arguing TRR did not provide sufficient time for him to review the Arbitration Agreement. Indeed, he signed the Arbitration Agreement the day he received the Offer Letter (November 24, 2023), despite the fact the Offer Letter indicated it was conditioned on Plaintiff executing the Arbitration Agreement prior to his start date (anticipated to be December 11, 2023). *See Montgomery*, 2020 WL 3169373, at *5 (enforcing arbitration agreement when the plaintiff electronically signed it the same day it became available for review even though the deadline to sign it was the plaintiff's first day of employment, two weeks later). Accordingly, Plaintiff's signature established his assent to form an enforceable contract. *See id.* ("Plaintiff's electronic signature on the [a]rbitration [a]greement suffices as her assent necessary to create a binding and enforceable contract."); *Thomas*, 2010 WL 3076861, at *5 ("Plaintiff's signature manifested her assent to the entire [o]ffer [l]etter, and she is bound by the arbitration clause contained therein."); *Horowitz v. AT&T Inc.*, Civ. A. No. 17-4827, 2019 WL 77331, at *9 (D.N.J. Jan. 2, 2019) ("A party is bound by the hyperlinked-agreement, even if that party did not review the terms and conditions of the hyperlinked agreement before assenting to them." (internal quotation marks omitted)).

Accordingly, the Court finds the Arbitration Agreement to be valid and enforceable.

**C. Scope**

Although Plaintiff does not challenge the scope of the Arbitration Agreement, the Court will nonetheless consider whether Plaintiff's claims fall within the Arbitration Agreement's reach. *See Moon v. Breathless Inc.*, 868 F.3d 209, 213 (3d Cir. 2017) ("Under New Jersey law, the law presumes that a court, not an arbitrator, decides any issue concerning arbitrability. To overcome this presumption, an arbitration clause must contain clea[r] and unmistakabl[e] evidence that the parties agreed to arbitrate arbitrability." (citations and internal quotation marks omitted)). Subsection (a) of the Arbitration Agreement states "claims subject to arbitration hereunder include

without limitation . . . claims by the Employee for *employment discrimination*, harassment, *retaliation*, wrongful termination or defamation under any federal, state, or local law, regulation, ordinance, or executive order or under common law." (ECF No. 11-2 at 7–8 (emphasis added).) This language plainly encompasses Plaintiff's discrimination and retaliation claims. Accordingly, because the Arbitration Agreement is valid and enforceable, and because Plaintiff's claims fall within its scope, TRR's Motion is **GRANTED**.[7]

## IV. CONCLUSION

For the reasons set forth above, the Motion (ECF No. 10) is **GRANTED**. An appropriate order follows.

***/s/ Brian R. Martinotti***
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: August 12, 2026

[7] In two paragraphs, without any citation to authority, Plaintiff argues the Arbitration Agreement is unenforceable as to Sollenberger because "Sollenberger is not a signatory to the Agreement." (ECF No. 13 at 9–10.) The Court disagrees. The Arbitration Agreement provides the claims subject to arbitration could be between "(i) the Employee and (ii) any of the Company, or any subsidiary, parent, other affiliate, other related entity, benefit plan, successor or permitted assign of the Company, or any owner, director, officer, member, *employee*, owner, shareholder, agent, or representative of any of them (in their respective capacities as such)." (ECF No. 11-2 at 7 (emphasis added).) Here, Plaintiff alleges Sollenberger was "employed by TRR as IT Manager and served as Plaintiff's direct supervisor from April 2024 until Plaintiff's termination." (ECF No. 1 ¶ 10.) "Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993) ("In keeping with the federal policy favoring arbitration, we . . . will extend the scope of the arbitration clauses to agents of the party who signed the agreements."); *see also Hirsch v. Amper Fin. Servs., LLC*, 71 A.3d 849, 859 (N.J. 2013) ("[A]s a matter of New Jersey law, courts properly have recognized that arbitration may be compelled by a non-signatory against a signatory to a contract on the basis of agency principles."); *Rodriguez-Ocasio v. MHC Receivables LLC*, Civ. A. No. 24-6493, 2026 WL 1803150, at *8 (D.N.J. June 23, 2026) ("The Third Circuit and courts within this Circuit [have] consistently enforced arbitration agreements against a non-signatory to the agreement."). Therefore, the Court finds Sollenberger may enforce the Arbitration Agreement as well.